IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA   )
   )   07 CR 846
   v.   )
   )   Judge Virginia M. Kendall
MONIQUE ELLINGTON   )
   )

## MEMORANDUM OPINION AND ORDER

On December 3, 2008, a jury convicted Defendant Monique Ellington ("Ellington") of one count of embezzlement of bank funds in violation of 18 U.S.C. § 656 and one count of bank larceny in violation of 18 U.S.C. § 2113. Ellington now moves for a judgment of acquittal with respect to the embezzlement charge, or, alternatively, for a new trial with respect to both counts. For the reasons stated, Ellington's Motion for Judgment of Acquittal and New Trial is denied.

## BACKGROUND

In Count I, the Superseding Indictment charged Ellington, a bank teller with Diamond Bank, with the embezzlement of bank funds in excess of $1,000 from her employer. Count II alleged that Ellington, her boyfriend Willie Perkins ("Perkins") and an unnamed individual stole approximately $5,000 from Diamond Bank. At trial, the Government introduced evidence that Ellington and Perkins had been living outside of their means until Perkins lost his job. In order to continue funding their lifestyle, Ellington began embezzling money from Diamond Bank by taking advantage of the bank's system of handling "excess cash" held within teller drawers. The Government presented evidence that a surprise audit of her teller drawer on December 13, 2007 revealed a shortage of cash.

In order to cover up the embezzlement, on December 13, 2007, Ellington suggested to

1

Perkins that they stage a robbery of Diamond Bank. On December 14, 2007, as Perkins drove Ellington to work, they stopped to pick up Nicholas Coleman ("Coleman"), the unidentified individual mentioned in Count II of the Superseding Indictment, and planned the staged robbery with him during the trip. Shortly after Ellington arrived at her teller station that morning, Coleman approached her, passed her a note demanding money from her drawer, and ran outside where he met up with Perkins, who was waiting for Coleman nearby in Ellington's car. Perkins and Coleman then drove away. Ellington initially reported that the bank robber had taken approximately $17,000 from Diamond Bank. However, the evidence presented at trial reflected that the bank's actual loss amount was between $5,000 and $6,000.

At the close of the Government's case in chief, Ellington moved for a judgment of acquittal on Counts I and II pursuant to Fed. R. Crim. P. 29(a). Ellington claimed that the Government had not presented sufficient evidence to support the a finding that the loss amount exceeded $1,000 with respect to Count I. The Court found that sufficient circumstantial evidence of a loss in excess of $1,000 existed to enable the jury to decide whether the Government met its burden of proof. The Court also denied Ellington's Rule 29 motion with respect to Count II. Ellington did not testify or put on a case in chief. After deliberating, the jury found Ellington guilty of both counts.

Ellington now moves for judgment of acquittal under Rule 29, claiming that the Court erred in denying her previous Rule 29 motion for judgment of acquittal because that the government submitted insufficient evidence to prove the $1,000 loss amount of the embezzlement charge. Additionally, Ellington moves for a new trial, claiming that the Court erred when it: 1) denied her motion for a mistrial during Perkins' direct examination; 2) ruled against her with respect to various evidentiary rulings; and 3) refused one of Ellington's requested jury instructions.

**DISCUSSION**

I. Motion for Judgment of Acquittal

A motion for a judgment of acquittal under Rule 29 challenges the sufficiency of the evidence against the defendant. *See* Fed. R. Crim. P. 29. Such a motion should be denied if, after viewing the evidence in the light most favorable to the prosecution, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Hicks*, 368 F.3d 801, 804 (7th Cir. 2004). A conviction should not be overturned unless "the record is devoid of evidence from which a reasonable jury could find guilt beyond a reasonable doubt." *United States v. Curtis*, 324 F.3d 501, 505 (7th Cir. 2003) (*citing United States v. Menting*, 166 F.3d 923, 928 (7th Cir. 1999)).

To establish a violation of 18 U.S.C. § 656, the Government must prove the following elements beyond a reasonable doubt: 1) that the defendant was a bank employee; 2) of a federally insured bank; 3) that the defendant willfully misapplied funds of the bank; 4) with the intent to injure or defraud the bank; and 5) the sum misapplied exceeds $1,000. *See United States v. Crabtree*, 979 F.2d 1261, 1266 (7th Cir. 1992). Ellington only challenges the loss amount, claiming that the evidence produced at trial could not have proven the $1,000 element of the embezzlement charge against her beyond a reasonable doubt. She did not raise any specific arguments in her motion; rather she incorporated by reference the arguments made during the oral Rule 29 motion following the close of the Government's case in chief. At that time, the entirety of Ellington's argument consisted of the statement, "I don't think the—with respect to the embezzlement count, Judge, I don't think the Government's met its burden with respect to the amount, $1,000, over one thousand dollars . . . The testimony is not clear with respect to that. And based on that I think that

3

the Rule 29 motion should be granted as to Count I."

With respect to Count I of the Superseding Indictment, Perkins testified that Ellington first told him that she had been stealing money from the Diamond Bank on December 13, 2007 after the surprise audit of her teller drawer. During that conversation, Perkins testified that Ellington admitted to him that she had stolen between $8,000 and $10,000 from the bank before she suggested that they stage a robbery to cover up her embezzlement. The Government also produced evidence that Ellington had stolen $775 in cash when Christopher Sebastian, Senior Vice President of Diamond Bank, had given Ellington a $775 check and $775 in cash to deposit into his accounts at Diamond. He made his deposit on December 10, 2007, but noticed that only the check had cleared when he balanced his account on December 12, 2007. When he questioned Ellington about the transaction, she entered the bank's vault, removed $775 in cash from a money bag and deposited that cash into his account.

Additionally, the Government introduced documents relating to the excess cash transactions that Ellington performed as a teller. The records showed that Ellington performed very few excess cash transactions before Perkins lost his job. For example, in April and May 2007, Ellington performed one excess cash debit and one credit per month. In June 2007 she performed two pairs of debits and credits to excess cash. She performed no excess cash transactions in July or August 2007. However, in September 2007, the month that Perkins lost his job, Ellington performed four pairs of excess cash debits and credits. In October 2007, Ellington conducted excess cash transactions on twelve of the fifteen days that she worked. In November 2007, Ellington performed excess cash transactions on nine of the fourteen days that she worked. In December 2007, she performed excess cash transactions on each of the ten days that she worked between December 4

and December 14. After the staged bank robbery on December 14, 2007, Ellington initially reported to bank officials and law enforcement agents that the bank lost $17,000. However, law enforcement agents later determined the actual value of the loss was between $5,000 and $6,000.

Based on that evidence, a reasonable jury could have concluded that Ellington had embezzled in excess of $1,000 from Diamond Bank. The evidence of Sebastian's lost cash deposit alone supports $775 of loss. Additionally, Ellington told Perkins that she had taken between $8,000 and $10,000 from the bank. The increased number of excess cash transactions that Ellington performed after Perkins lost his job in September 2007 provides some corroboration of that statement. Finally, the Government presented evidence that Ellington staged the December 14, 2007 robbery of Diamond Bank in order to cover up her embezzlement. Although she only handed over $5,000 to $6,000 of cash when Coleman approached her teller station, she reported a loss of $17,000. A reasonable jury could infer that the difference between the reported loss amount and the actual loss amount represents the amount of money that Ellington had embezzled from Diamond Bank, because the purpose of the staged robbery would have been to conceal the amount of money that she had taken from the bank. Therefore, based upon the evidence presented at trial, a reasonable jury could have concluded beyond a reasonable doubt that Ellington embezzled in excess of $1,000. Accordingly, Ellington's Motion for Judgment of Acquittal is denied.

II. Motion for New Trial

A motion for a new trial under Rule 33(a) should be granted only if required by "the interests of justice." Fed. R. Crim. P. 33(a). Such a motion should be granted sparingly and is only appropriate if "substantial rights of the defendant have been jeopardized by errors or omissions during trial." *United States v. Kuzniar*, 881 F.2d 466, 470 (7th Cir. 1989). A defendant is entitled

to a new trial if there is a reasonable possibility that a trial error had a prejudicial effect upon the jury's verdict. *See United States v. Berry*, 92 F.3d 597, 600 (7th Cir. 1996). In support of her Motion for a New Trial, Ellington claims that the Court erred when it: 1) denied her motion for a mistrial during Perkins' direct examination; 2) ruled against her with respect to various evidentiary rulings; and 3) refused one of her requested jury instructions.

A. Motion for a Mistrial

Before the trial, the Government indicated that it intended to introduce evidence of Ellington's expenditures in order to support its theory that Ellington had the motive to embezzle money from Diamond Bank so that she could continue to live the same lifestyle that she had before Perkins lost his job in September 2007. For example, the Government had obtained evidence that Ellington and Perkins spent their money dining out at restaurants, staying in hotel rooms, gambling at casinos in Northwest Indiana and using marijuana. When Ellington moved to limit evidence relating to the use of marijuana, the Court took the motion *in limine* under advisement. *See* Doc. No. 80, Order dated Nov. 17, 2008. Before Perkins testified, the parties informed the Court that they had agreed to use the term "entertainment expenses" at trial to refer to the money that Ellington and Perkins spent on marijuana. Therefore, the Court denied Ellington's motion *in limine* as moot.

When Perkins testified during his direct examination, the following exchange occurred between the Government and Perkins:

> Q: Between March of 2007 and August of 2007, what sorts of things did you and Ms. Ellington do when you were together?
>
> A: We would go out, go to the bar, have a few drinks, we would go to the boat, go out to eat, movies, hotels.
>
> Q: What type of boats are you referring to?

6

> A:    Casinos.

$$* * *$$

> Q:    What type of expenses did you and Ms. Ellington have when you went out together between March and August of 2007?

> A:    Marijuana purchases. That's about it, really. Food. Outside of food and things like that.

That reference to marijuana was the only time that Perkins used the word "marijuana" instead of the agreed upon term "entertainment expenses." Although Ellington did not object at that time, at the next break, she moved for a mistrial based upon Perkins' use of the word "marijuana," claiming that the Government deliberately elicited the testimony in violation of a court order and that the testimony would make it impossible for her to receive a fair trial.

The Court noted that the testimony did not violate a court order because the parties had independently agreed to the use of the term "entertainment expenses" in place of "marijuana." Additionally, the Court found that no evidence existed to support Ellington's contention that the Government deliberately induced Perkins to use the word "marijuana." Finally, the Court denied Ellingtion's motion for a mistrial and gave the jury a limiting instruction when it returned to the courtroom:

> Folks, before we begin, I want to give you what we call a limiting instruction, so it's an order that you must follow from me regarding the evidence you just have. You have hears some testimony regarding whether the defendant may have used marijuana. That testimony should not be considered in any way by you in determining whether she is guilty or not guilty of the charges in the Indictment.

Ellington claims that Perkins' reference to marijuana purchases denied her a fair trial. She also renews her contention that the Government deliberately elicited the testimony in bad faith and in

violation of a court order.

First, the Court reiterates that Perkins' testimony did not violate a court order. The parties had come to their own agreement regarding the use of the phrase "entertainment expenses" as a euphemism for purchasing marijuana. The Court never ruled that Ellington's marijuana purchases were inadmissible. Additionally, as the Court found at trial, there is no evidence that the Government deliberately elicited the word "marijuana" from Perkins. Rather, Perkins volunteered his answer in response to a general question regarding expenditures that he and Ellington incurred between March and August 2007. After his answer, the Government immediately moved to another area of questioning without dwelling on Ellington's use of marijuana. Therefore, the Government did not elicit the testimony from Perkins in bad faith or in violation of a court order.

Generally, evidence of other crimes, wrongs or acts is admissible to establish a defendant's motive unless the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. *See* Fed. R. Evid. 404(b), 403; *United States v. Thompson*, 359 F.3d 470, 475 (7th Cir. 2004). Here, the Government's theory of the case was that Ellington began embezzling money from Diamond Bank after Perkins lost his job because she could not afford to pay for all of their expenses on her own. Therefore, evidence regarding what she paid for when she went out with Perkins is relevant to establish her motive for taking money from the bank. Accordingly, the fact that she spent money on marijuana, food, hotel rooms, movies and entertainment in the months before she started embezzling money from the bank provides evidence of her motive. Additionally, the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice because the evidence of her expenditures is highly probative of her motive. That high probative value is not substantially outweighed by the danger

8

that the jury would disregard the evidence in the case and convict her of embezzlement and staging

a bank robbery solely on the basis of purchasing marijuana. Additionally, Perkins' testimony did

not indicate that Ellington actually *used* the marijuana; he only testified that she purchased it.

Therefore, his single statement regarding Ellington's connection to marijuana was limited to topic

at issue: the expenditures that would have provided Ellington with the motive to take money from

the bank. Accordingly, Perkins' testimony regarding the fact that Ellington spent money on

marijuana in the months before she took money from the bank was admissible under the Federal

Rules of Evidence. Because the evidence was admissible, Ellington is not entitled to new trial

because Perkins made a single reference to Ellington's marijuana purchases.

Additionally, after Perkins testifed that Ellington had purchased marijuana, the Court

provided the jury with a limiting instruction that testimony regarding Ellington's use of marijuana

should not be considered in determining her guilt. "Limiting instructions are sufficient to cure any

potential prejudice resulting from the admission of Rule 404(b) evidence." *United States v. Brooks*,

125 F.3d 484, 500 (7th Cir. 1997). The limiting instruction therefore reduced the possibility of

unfair prejudice to Ellington because the Court instructed the jurors that they may not consider

whether she used marijuana. Because the fact that she purchased marijuana was admissible to

establish her motive and because the Court gave a limiting instruction that prohibited the jury from

considering her use of marijuana in determining her guilt, the Court did not err in denying

Ellington's motion for a mistrial. Therefore, with respect to the denial of her motion for a mistrial,

Ellington has not established that an error had a prejudicial effect on the jury's verdict.

B. Evidentiary Rulings

Ellington claims that the Court erred in admitting evidence that Ellington refused to take a

polygraph examination and in admitting evidence of Ellington's gambling activity.

i. Ellington's Refusal to Take a Polygraph Examination

The Government presented evidence that Ellington refused to take a polygraph examination when she was at the FBI Building on December 14, 2007 following the staged robbery of Diamond Bank. Ellington claims that the evidence should have been excluded because it was irrelevant and highly prejudicial.

The evidence presented at trial showed that Ellington accompanied several FBI agents to the FBI Building after the robbery. Because Coleman approached her at the bank when he demanded the money, the FBI had originally considered her to be the victim teller. After the FBI learned that Coleman entered Ellington's car after he left the bank, Ellington informed the agents that Perkins dropped her off at work that morning and then kept the car for the day. The agents then asked her to make contact with Perkins because they wanted to question him about the bank robbery, but the call went to his voicemail. At that point, Ellington agreed to take a polygraph examination regarding the events surrounding the bank robbery. After agents escorted her to the polygraph testing area, Ellington changed her mind and indicated that she did not want to take the examination at that time, but she would be open to rescheduling the examination for a future time.[1] Later that day, after Perkins had implicated Ellington in the staged bank robbery and after Ellington confessed to her involvement, Ellington told FBI Agent Nikki Ruddy ("Ruddy") that she chose to not take the polygraph examination "because I knew I would fail it terribly." Before Ruddy testified regarding

_____

[1] In ruling on Ellington's previous Motion to Suppress, the Court made a factual finding that Ellington did not ask for an attorney when she refused to take the examination on December 13, 2007. *See* Memorandum Opinion and Order dated Nov. 11, 2008, Docket No. 85, at 15-16. Additionally, the Court found that she did not invoke her right to silence or indicate an unwillingness to take a polygraph examination in the future because she intended on rescheduling the exam. *See id.* at 14.

Ellington's statement, at Ellington's request, the Court gave the jury the following limiting instruction:

> Folks, I'd like to give you an instruction that you need to follow in your deliberations. An individual's refusal to take a lie detector test is in and of itself not an indication of one's guilt.

Evidence of a defendant's consciousness of guilt is relevant and admissible evidence in a criminal trial. *See United States v. Miller*, 276 F.3d 370, 374-75 (7th Cir. 2002). Although Ellington claims that her refusal to take the polygraph examination is irrelevant and highly prejudicial, her statement that she opted to not take the examination because she knew that she would fail it provided evidence of her consciousness of guilt. At the time that she refused to take the examination, she had not yet confessed to participating in the staged robbery. In fact, she had been portraying herself as witness based on her status as the victim teller. Therefore, her statement that she refused to take the polygraph examination because she knew that she would fail it provides evidence that she believed that taking the examination would expose her involvement in the staged bank robbery.

Additionally, at Ellington's request, the Court instructed the jury that the refusal to take a polygraph examination is not an indication of guilt. An unchallenged limiting instruction cures any potential prejudice from the admission of evidence that is only admissible for a limited purpose. *See United States v. Kim*, 111 F.3d 1351, 1364 (7th Cir. 1997) (citing *Berry v. Deloney*, 28 F.3d 604, 608 (7th Cir. 1994). Because Ellington's refusal to take a polygraph examination was admissible for the limited purpose of providing evidence of her consciousness of guilt and because the Court instructed the jury that it could not use the refusal as evidence of guilt, Ellington has not established that the Court committed an error that had a prejudicial effect on the jury's verdict.

ii. Evidence of Ellington's Gambling Activity

Ellington also claims that the Court erred in admitting evidence of Ellington's gambling activity under Fed. R. Evid. 404(b). At trial, the Government presented evidence that Ellington and Perkins spent money gambling at casinos, eating out and staying in hotels even after Perkins lost his job. Gambling records revealed that Ellington had lost at least several hundred dollars in the months leading up to the staged bank robbery. Based on the amount of money that Ellington lost gambling along with the Government's theory of the case that Ellington began to embezzle money from Diamond Bank in order to fund the expenditures that she and Perkins incurred, the Court found that the evidence related to her gambling activity was relevant to establish her motive for embezzling money and for staging the bank robbery and that the probative value of the evidence was not substantially outweighed by the risk of unfair prejudice.

Evidence of prior bad acts is not admissible to show character traits and conformity with those traits. *See* Fed. R. Evid. 404(b). Nevertheless, evidence of prior acts is admissible to establish something other than the defendant's propensity to commit the crime, such as motive, intent, or identity, and the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. *See id.*; Fed. R. Evid. 403. Evidence of gambling has been found to be admissible under Rule 404(b) when the question of cash flow is relevant to the defendant's motive. *See United States v. Mobley*, 193 F.3d 492, 495-96 (7th Cir. 1999); *see also United States v. Morant*, 98 Fed. Appx. 560, 564 (7th Cir. 2004) (gambling losses admissible to prove motive for bank robbery); *cf. United States v. Swan*, 250 F.3d 495, 501 (7th Cir. 2001) (mere fact that defendant participated in gambling activity is inadmissible character evidence when prosecution did not attempt to link gambling *losses* to motive to steal money).

Here, the Government's evidence relating to Ellington's gambling losses provided some evidence of her motivation to embezzle from the bank. Evidence of her expenditures in the months leading up to the bank robbery supported the Government's theory that Ellington began to take money from the bank so that she could continue to fund the lifestyle that her and Perkins had experienced before he lost his job. Included in those expenditures were gambling trips to casinos in Indiana where she lost several hundred dollars gaming in addition to the money that she spent on hotels and food while on these trips. In order to reduce the risk of any potential prejudice to Ellington, the Court conducted voir dire of prospective jurors regarding whether they held strong beliefs regarding gambling and struck several prospective jurors for cause based on their responses. Ellington now fails to make any specific arguments as to how the evidence of her gambling losses denied her a fair trial. Because the evidence of her gambling losses was relevant to establish her motive for embezzling money from Diamond Bank and because the probative value of that evidence is not outweighed by the prejudicial effect of the evidence, Ellington has failed to demonstrate an error that could have had a prejudicial effect on the jury's verdict.

C. Refusal of Ellington's Proposed "Mere Association" Instruction

Before the jury began deliberations, Ellington requested that the Court give Pattern Federal Jury Instruction for the Seventh Circuit 5.11(b) ("the 'mere association' instruction") with respect to the bank larceny charge. Pattern Instruction 5.11(b) states: "If a defendant performed acts that advanced a criminal activity but had no knowledge that a crime was being committed or was about to be committed, those acts alone are not sufficient to establish the defendant's guilt." Finding that the proposed instruction was not supported by the evidence, the Court refused to provide the jury with the "mere association" instruction. Ellington now claims that the refusal of the tendered jury

13

instruction prevented her from receiving a fair trial.

To show entitlement to a particular instruction, a defendant must show that: 1) the instruction is a correct statement of the law; 2) the evidence in the case supports the theory of defense; 3) the theory is not already part of the charge; and 4) failure to provide the instruction denied the defendant a fair trial. *See United States v. James*, 464 F.3d 699, 707 (7th Cir. 2006). To determine whether a theory is already part of the charge, a court "must consider whether the instructions as a whole adequately informed the jury of the theory of defense." *United States v. Prude*, 489 F.3d 873, 882 (7th Cir. 2007) (citing *United States v. Given*, 164 F.3d 389, 394-95 (7th Cir. 1999)).

Here, Ellington's proposed "mere association" instuction is an accurate statement of the law. *See United States v. Percival*, 756 F.2d 600, 610 (7th Cir. 1985). However, the instruction "should be used in a limited fashion . . . where a defendant is present and takes some action which is the subject of conflicting testimony." Committee Comment to Seventh Circuit Pattern Instruction 5.11. Here, the evidence did not contain conflicting testimony regarding Ellington's association with Perkins and Coleman. Perkins and Coleman each consistently testified that Ellington instructed them on how to perform the bank larceny in the car on the way to the bank. For example, they each testified that Ellington told them how many security guards would be present within Diamond Bank, where they would be located, and how to determine which stolen bills the bank had "marked" for identification in the case of a bank robbery. They each testified that based on that information, they discarded the marked bills before they divided the money. Additionally, they testified that Ellington went inside of a grocery store and a convenience store in order to purchase hats and gloves for Coleman to wear when he entered the bank. No other witness presented testimony that controverted their accounts of Ellington's actions. Most critically, the Government introduced Ellington's own

written confession where she admitted that she had spoken to Perkins and someone else about staging a robbery of the bank using a note and that she told Coleman about bank's layout before he came inside to hand her the note. Therefore, the evidence presented at trial did not support Ellington's proposed "mere association" instruction.

Additionally, Ellington's theory that she did not have knowledge of the bank robbery and that she did not plan the robbery with Perkins and Coleman is reflected in the instructions the Court gave. The Court instructed the jury that

> [a]ny person who knowingly aids, counsels, commands, induces or procures the commission of an offense may be found guilty of that offense. That person must knowingly associate with the criminal activity, participate in the activity, and try to make it succeed. If the defendant knowingly caused the acts of another, the defendant is responsible for those acts as though she personally committed them.

Pattern Instruction 5.06. The Court further instructed the jury that

> [w]hen the word "knowingly" is used in these instructions, it means that the defendant realized what she was doing and was aware of the nature of her conduct, and did not act through ignorance, mistake or accident. Knowledge may be proved by the defendant's conduct, and by all the facts and circumstances surrounding the case.

Pattern Instruction 4.06.

The function of the "mere association" instruction is to tell the jury "that it was not enough that the defendant [was] present at a crime scene or [was an] unwitting participant in criminal activity; [she was] guilty only if [she] knowingly participated in some part of the criminal act." *United States v. Scott*, 267 F.3d 729, 739 (7th Cir. 2001). The instructions that the jury received performed that same function because they informed the jury that Ellington had to knowingly associate with criminal activity before it could find her guilty of the bank larceny. Therefore, because Ellington's tendered "mere presence" instruction was not supported by the evidence and

15

because the instructions that the jury received directed the jury to only find Ellington guilty if she knowingly participated in the larceny, Ellington was not entitled to the tendered "mere presence" instruction.

## CONCLUSION AND ORDER

For the reasons stated, Ellington's Motion for Judgment of Acquittal and New Trial is denied.

So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date:   May 11, 2009